IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KEVIN MURPHY, Individually and On Behalf of All Others Similarly Situated, | Case No. 3:16-cv-00521-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| PRECISION CASTPARTS CORP., MARK DONEGAN, and SHAWN R. HAGEL, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

AMF Pensionsförsäkring AB and the Oklahoma Firefighters Pension and Retirement System (hereinafter, "Lead Plaintiffs") filed an Amended Class Action Complaint for Violation of the Federal Securities Laws on behalf of all persons or entities who purchased or otherwise acquired the publicly traded securities of Precision Castparts Corporation ("PCC") between May 9, 2013 and January 15, 2015 (hereinafter, the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Lead Plaintiffs allege that PCC, PCC's Chairman and Chief Executive Officer ("CEO") Mark Donegan ("Donegan"), and PCC's Executive Vice

President and Chief Financial Officer ("CFO") Shawn Hagel ("Hagel") (together, "Defendants") violated Sections 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.

Lead Plaintiffs and Defendants filed cross motions for summary judgment pursuant to FED. R. CIV. P. 56. On July 3, 2020, the Court denied Lead Plaintiffs' motion for partial summary judgment, and granted in part and denied in part Defendants' motion for summary judgment. (ECF No. 308) (the "July 3, 2020 Opinion").[1] On October 5, 2020, the Court denied Defendants' motion for reconsideration of the Court's July 3, 2020 Opinion. (ECF No. 316.)

Currently before the Court is Defendants' second motion for reconsideration of the Court's July 3, 2020 Opinion, in light of the Ninth Circuit's recent opinion in *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021). (ECF No. 319.) The Court has jurisdiction over this matter under 28 U.S.C. § 1331, and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. For the reasons discussed below, the Court grants Defendants' motion for reconsideration, and enters summary judgment for Defendants on all remaining counts.

## BACKGROUND

Lead Plaintiffs allege that Defendants made forty-four statements during the Class Period that were materially false and misleading, primarily with respect to PCC's earnings guidance for Fiscal Year 2016 ("FY16"). Lead Plaintiffs' theory of liability is that Defendants always knew the FY16 earnings guidance was unattainable because their financial projections were based on unrealistic assumptions, and Defendants knew throughout the Class Period that PCC was failing

---

[1] In that opinion, the Court granted summary judgment for Hagel on all of Lead Plaintiffs' claims against her, and therefore only PCC and Donegan remain as defendants. (July 3, 2020 Opinion at 75-79.)

to achieve the organic growth necessary to meet the target, in part because PCC's practice of pulling in sales to earlier quarters was unsustainable and a large customer was continuing to destock its inventory. Lead Plaintiffs allege that Defendants nevertheless made statements throughout the Class Period misrepresenting that PCC was achieving anticipated benchmarks en route to its FY16 target, which created an impression of a state of affairs materially different from the one that existed.

In its July 3, 2020 Opinion, the Court granted Defendants' motion for summary judgment with respect to twenty-six of the alleged misstatements. *See* July 3, 2020 Opinion at 55, 62 (entering summary judgment with respect to Statements 1-7, 10, 13-14, 16-17, 20-21, 27, 29-33, 35, 38, 40-41, and 43-44). However, the Court denied the motion with respect to eighteen of the challenged statements. *See* July 3, 2020 Opinion at 51-53, 57 (denying summary judgment with respect to Statements 8-9, 11-12, 15, 18-19, 22-26, 28, 34, 36-37, 39, and 42). Defendants now move the Court to reconsider its opinion in light of the Ninth Circuit's opinion in *Tesla*.

## DISCUSSION

## I.     LEGAL STANDARDS

"Although the Federal Rules of Civil Procedure do not expressly authorize a motion for reconsideration, '[a] district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment.'" *Am. Med. Response Nw., Inc. v. ACE Am. Ins. Co.*, 31 F. Supp. 3d 1087, 1091 (D. Or. 2014) (quoting *Smith v. Massachusetts*, 543 U.S. 462, 475 (2005)); *see also Coultas v. Payne*, No. 3:11-cv-00045-AC, 2016 WL 4385835, at *4 (D. Or. Aug. 15, 2016) (granting motion for reconsideration of motion for summary judgment in light of intervening, controlling case law); FED. R. CIV. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be

revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

## II.   ANALYSIS

Defendants argue that the Ninth Circuit's *Tesla* opinion requires the Court to reconsider its July 3, 2020 Opinion with respect to its analysis of the PSLRA's Safe Harbor for forward-looking statements and the falsity element of Section 10(b) of the Exchange Act.

### A.   The Ninth Circuit's *Tesla* Opinion

In *Tesla*, the plaintiffs alleged that Tesla, its Chairman and Chief Executive Officer Elon Musk ("Musk"), and another officer misled the market about Tesla's progress in producing its Model 3 in 2017. The plaintiffs alleged that fifteen of the defendants' public statements about Tesla's goal of manufacturing 5,000 vehicles per week by the end of 2017 were materially false and misleading because the defendants knew that the projected level of production was unattainable. The Ninth Circuit affirmed the district court's dismissal of the second amended complaint without leave to amend, holding that the plaintiffs "failed to plead sufficient facts to avoid the PSLRA's safe harbor or to establish falsity." *Tesla*, 985 F.3d at 1190; *see also id.* at 1196.

Specifically, the Ninth Circuit found that the following statements were not actionable: "[Tesla is] not really seeing any significant change that needs to occur with Model 3" to reach its target; "it's coming in as expected"; "it's getting pretty close to the bull's-eye"; "I'm not aware of anything that would affect our prior statements about volume target"; "I don't know anything that would prevent us from [meeting our target]"; "there are no issues"; "preparations at our production facilities are progressing [to meet our target]"; "we are on-track for start of Model 3 production"; and "we continue to remain on track." *Id.* at 1190-91. The plaintiffs alleged that Musk knew long before he made these statements that producing 5,000 vehicles a week in 2017

was unattainable, in part because the plant's director of manufacturing had informed Musk that there was "zero chance that the plant would be able to produce 5,000 Model 3s per week by the end of 2017." *Id.* at 1186.

The Ninth Circuit applied its opinion in *In re Quality Systems, Inc. Securities Litigation*, 865 F.3d 1130 (9th Cir. 2017), to analyze Musk's "mixed" statements. The Ninth Circuit held in *Quality Systems* that "the PSLRA's safe harbor does not apply in an all-or-nothing fashion, because some statements about the future may combine non-actionable forward-looking statements with separable—and actionable—non-forward looking statements." *Tesla*, 985 F.3d at 1190 (citing *Quality Sys.*, 865 F.3d at 1142). "In the context of such 'mixed' statements, only the forward-looking aspects could be immunized from liability, because the safe harbor is not 'designed to protect [issuers] when they make a materially false or misleading statement about current or past facts, and combine that statement with a forward-looking statement.'" *Id.* at 1190 (quoting *Quality Sys.*, 865 F.3d at 1141-42).

The Ninth Circuit first addressed whether the Safe Harbor protects Musk's statements that Tesla remained "on track" to reach its target:

> Because any announced 'objective' for 'future operations' *necessarily* reflects an implicit assertion that the goal is achievable based on current circumstances, an unadorned statement that a company is 'on track' to achieve an announced objective, or a simple statement that a company knows of no issues that would make a goal impossible to achieve, are merely alternative ways of declaring or reaffirming the objective itself.

*Id.* at 1192 ("The statutory safe harbor would cease to exist if it could be defeated simply by showing that a statement has the sort of features that are inherent in any forward-looking statement."). Thus, it is now clear that the Safe Harbor protects statements that a company remains "on track" to meets its target. *Cf.* July 3, 2020 Opinion at 50 ("[C]ourts are split on whether such 'on track' statements are forward-looking.") (collecting cases).

The Ninth Circuit next examined whether "Plaintiffs have sufficiently pleaded that any of the challenged . . . statements went beyond the mere declaration of the year-end goal in a way that includes a non-forward looking statement." *Tesla*, 985 F.3d at 1192. "In this regard, we reiterate that it is not enough to plead that a challenged statement rests on subsidiary premises about how various *future* events will play out over the timeframe defined by the forward-looking statement." *Id.* The Ninth Circuit noted that "'statements of the assumptions underlying or relating' to a declared objective are also deemed to be forward-looking statements." *Id.* (citing 15 U.S.C. § 78u-5(i)(1)(D)). However, "[i]n contrast to such 'assumptions' about future events, a concrete factual assertion about a specific present or past circumstances goes *beyond* the assertion of a future goal, and beyond the articulation of predicate assumptions, because it describes specific, concrete circumstances *that have already occurred*." *Id.* at 1192. "Such statements are therefore not forward-looking, and—unlike 'on track' assertions—they do not rest on the sort of features that are intrinsic to all forward-looking statements." *Id.*

The Ninth Circuit provided examples of a concrete factual assertion about specific present or past circumstances: "[W]hile one cannot declare a goal without implicitly or explicitly stating that it is achievable, one can readily announce an objective *without* stating, for example, that the reason why it is achievable *is because production of relevant units actually rose 76% over the last quarter* or because *the company has actually hit certain intermediate benchmarks*." *Id.* (emphasis added). "If such factual assertions are made and are false, then they are outside the safe harbor and potentially actionable." *Id.*

The Ninth Circuit concluded that the *Tesla* plaintiffs had not pleaded any such actionable statements. *Id.* at 1192, 1195-96. The Ninth Circuit found that Tesla's reaffirmations of its year-end goal, and its statements that it remained "on track" to achieve the goal "are forward-looking

for the same reasons that Tesla's original projections and assumptions in May are." *Id.* at 1195. The Ninth Circuit also found that Tesla's statement that its "'preparedness at this time' would allow it to achieve its year-end goal does not go beyond what is inherent in declaring any forward-looking objective." *Id.* at 1196. The Ninth Circuit explained that "[s]uch a generic statement does not include the sort of 'concrete description' about the facts concerning the 'past and present state' of production that [the Ninth Circuit] confronted in *Quality Systems*[.]" *Id.*

The Ninth Circuit also found that the *Tesla* plaintiffs failed adequately to plead falsity with respect to Tesla's vague statements about its "great progress" on production, finding that such a statement would be an actionable false statement *only* if Tesla had been "making no progress at all." *Id.*

### B. Donegan's FY16 Target Statements

The Court agrees with Defendants that Musk's non-actionable statements in *Tesla* (e.g., "it's coming in as expected"; "getting pretty close to the bull's-eye"; "there are no issues"; "preparations are progressing"; "we are on-track") are indistinguishable from Donegan's FY16 target statements here (e.g., "we're on that slope"; "we're pretty much on that drum beat"; "we hover around that line"; "the framework . . . is all intact"; "nothing has gone negative"; "we've been able to stay on that continuum"; and "there is no change to the . . . framework we laid out"). Specifically, although this Court previously held that the Safe Harbor does not protect Donegan's "on the line" statements because they contained facts about PCC's current circumstances, it is clear from the Ninth Circuit's reasoning in *Tesla* that Donegan's relatively generic statements do not include sufficiently "concrete descriptions" of present facts to fall outside the protection of the Safe Harbor.[2] *Tesla*, 985 F.3d at 1196.

_____

[2] In contrast, the Ninth Circuit held in *Quality Systems*, on which this Court relied in its July 3, 2020 Opinion, that the defendants' statements such as "there is nothing drying up and

In addition, Donegan's statements here about PCC's current circumstances are just as vague as Musk's statements in *Tesla*, and thus under the Ninth Circuit's reasoning in *Tesla* these statements are too vague to be actionable.[3] *Id.* at 1196. For example, the Ninth Circuit held that Musk's statement about Tesla making "great progress" cannot be false unless Tesla had been "making no progress at all." *Id.* Similarly, under *Tesla*'s reasoning, Donegan's statements that "the framework is intact" cannot be false unless there was no longer any part of the framework intact. In addition, Donegan's statements about being on or near the "line" or "slope" cannot be false unless he was clear regarding the specifics of the line or slope to which he was referring.

Lead Plaintiffs argue that the Ninth Circuit held in *Tesla* that a company's statement that it "has actually hit certain intermediate benchmarks" is sufficiently concrete and specific to qualify as a "concrete factual assertion[] about a specific present or past circumstance." (Lead Pls.' Opp'n at 2.) Indeed, this Court held in its July 3, 2020 Opinion that a statement about hitting incremental benchmarks en route to a target articulates a present fact about the company's circumstances. *See* July 3, 2020 Opinion at 51 ("The statements at issue here more forcefully suggest that PCC is currently positioned right where it anticipated it would be when it issued the

---

there is nothing slowing down," "our pipeline is deep," "our categories . . . are strong," and "our fundamentals haven't changed" (*Quality Sys.*, 865 F.3d at 1143) "provided a concrete description of the past and present state of the [defendants'] pipeline" and were therefore actionable. *Id.* at 1144; *see also id.* at 1142 (discussing a statement that sales are "still going strong" as an actionable misstatement if the speaker knew that sales were about to collapse) (citing *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 705 (7th Cir. 2008)).

[3] The Court also agrees with Defendants that under *Tesla*, Statement 19 is too vague to be actionable. *See* July 3, 2020 Opinion at 16-17 ("We are a linear-thinking group of people. We're financially driven. Everything we do breaks down to a financial model. Let there be no mistake. It breaks itself down to the core components. So it's not a hope and a prayer. . . . So our mindset is going to be linear. You're going to see different movements. I didn't shirk when we didn't get the acceleration from—because of the destocking. You know what, we pull the other levers. We got cost takeout. We've got these acquisitions. I know all the levers that are there.").

guidance, i.e., that it had achieved an incremental benchmark.") (citing *Cutler v. Kirchner*, 696 F. App'x 809, 814 (9th Cir. 2017)). However, this Court reads *Tesla* to instruct that a company must disclose that it reached a *specific* benchmark for the statement to be actionable, not that it reached an undisclosed or non-specific benchmark. The Court bases that conclusion on the Ninth Circuit's inclusion of an example of such a concrete statement—"production of relevant units actually rose 76% over the last quarter"—and on *Tesla*'s holding that Musk's benchmark-like statements (e.g., "it's coming in as expected") were too vague to be actionable.

As in *Tesla*, where the plaintiffs alleged that Musk knew Tesla's announced target was close to impossible to attain but continued to make statements that Tesla was progressing toward the target, here the plaintiffs have presented evidence that suggests Donegan knew the announced target was close to impossible to attain but continued to make statements that PCC was progressing toward its target. In light of *Tesla*, Defendants' statements that remain at issue here were not sufficiently concrete to qualify as "a concrete factual assertion about a specific present or past circumstances," nor specific enough for Lead Plaintiffs to establish falsity. *Tesla,* *985 F.3d at 1192*. Accordingly, the Court reconsiders its prior opinion, and grants Defendants' motion for summary judgment on Lead Plaintiffs' remaining FY16 statements (Statements 11, 15, 22, 24, 26, 28, 34, 36, and 39; and Statement 19).

## C.    Donegan's Other Statements

Defendants argue that the Court should enter summary judgment on all of the remaining statements that do not fall under the FY16 target category because Lead Plaintiffs' loss causation evidence identified corrective disclosure events only with respect to alleged misrepresentations regarding the FY16 target. (Defs.' Mot. for Reconsideration at 9; Defs.' Reply at 11.) Lead Plaintiffs appear to accept that they have not established loss causation with respect to these

other statements.[4] *See* Lead Pls.' Opp'n at 25 ("Defendants' arguments that the Court should reconsider its conclusions with respect to loss causation is premised on their erroneous argument that *Tesla* compels the Court to revisit its rulings with respect to the Safe Harbor. As shown here, those arguments fail, and so there is no basis to reconsider the Court's finding that genuine disputes exist with respect to loss causation and damages.").

In its July 3, 2020 Opinion, the Court denied Defendants' *Daubert* motion with respect to Lead Plaintiffs' loss causation expert, Chad Coffman, holding that:

> Although the Court agrees with Defendants that Coffman's opinion does not fit squarely with Lead Plaintiffs' theories specific to pull-in sales and destocking standing alone, his opinion is consistent with Lead Plaintiffs' primary theory of liability that Defendants falsely assured investors that PCC was hitting benchmarks along the way to reaching the FY16 Target while omitting material information about PCC's organic growth, reliance on pull-in sales, and the impact of destocking.

(July 3, 2020 Opinion at 73.) In other words, Coffman's opinion established loss causation with respect to Lead Plaintiffs' primary theory of liability on the FY16 target statements, but did not establish loss causation for the other challenged statements relating to destocking if those statements were to stand alone. Now that the Court has entered summary judgment with respect to the FY16 target statements, Lead Plaintiffs have failed to establish loss causation with respect to any of the remaining statements. Accordingly, the Court enters summary judgment for Defendants with respect to all of the remaining statements at issue (Statements 8-9, 12, 18, 23, 25, 37, and 42).

///

///

---

[4] Lead Counsel also acknowledged at oral argument that the Lead Plaintiffs' expert report does not support a loss causation finding with respect to statements other than those addressing the FY16 target. (*See* 4/21/21 Tr. at 37-38.)

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants' Motion for Reconsideration of the Court's July 3, 2020 Opinion and Order (ECF No. 319), reconsiders its opinion in light of the Ninth Circuit's opinion in *Tesla*, and enters summary judgment for Defendants on all of Lead Plaintiffs' remaining claims.

**IT IS SO ORDERED.**

DATED this 24th day of May, 2021.

HON. STACIE F. BECKERMAN
United States Magistrate Judge